## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       Plaintiff,

v.

CLAUDE WHITE (03),

       Defendant.

Case No. 09-20143-03-DDC

## MEMORANDUM AND ORDER

This matter is before the court on Mr. Claude White's Motion for Compassionate Release (Doc. 263).  The government filed a Response (Doc. 269).  And Mr. White filed a Reply (Doc. 273).  On November 19, 2020, Mr. White tested positive for COVID-19.  Doc. 273 at 2.  On January 25, 2021, he filed a Supplement to Reply (Doc. 288) informing the court of the ongoing prevalence of COVID-19 among the inmate and staff populations at his BOP institution.  Doc. 288 at 1–2.

For the reasons explained below, the court dismisses Mr. White's motion.

## I.    Background

On September 17, 2010, defendant Claude White pleaded guilty to bank robbery, attempted bank robbery, and using and carrying a firearm in furtherance of a crime of violence. Doc. 76; Doc. 77; Doc. 78.  The Amended Presentence Investigation Report calculated an advisory guideline range of 130–162 months' imprisonment for the bank robbery counts, plus a consecutive mandatory minimum sentence of 60 months for the firearm count under 18 U.S.C. § 924(c).  Doc. 99 at 25 (Am. PSR ¶ 125).  Our court then imposed a mid-range sentence of 144 months on the robbery counts.  Doc. 103.  Given the 60-month consecutive § 924(c) sentence,

the total sentence of imprisonment was 204 months.  *Id.*  "After conducting a full examination of all the proceedings," the Tenth Circuit held that Mr. White could "raise no meritorious issue on appeal."  *United States v. White*, 433 F. App'x 681, 681–82 (10th Cir. 2011).  Mr. White now serves his sentence at FCI Greenville in Illinois and is set to complete his term of imprisonment on April 14, 2024.  *See* Claude White, Reg. No. 12177-031, https://www.bop.gov/inmateloc/ (last visited Feb. 10, 2021).  After that, he will face three years of Supervised Release.  Doc. 103.

With this background in mind, the court now consults the legal standard governing Mr. White's motion.

## II.    Legal Standard

"'Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute[.]'"  *United States v. James*, 728 F. App'x 818, 822 (10th Cir. 2018) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "After entry of final judgment, a district court has jurisdiction only to the extent permitted by statute or rule."  *Id.*

Title 18 U.S.C. § 3582(c) announces a general rule that the "court may not modify a term of imprisonment once it has been imposed[.]"  But the statute also recognizes certain exceptions.  Even after it has imposed a term of imprisonment, the sentencing court may modify that term "upon motion of the defendant after [1] the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).  "Under that statute, a district court may reduce a sentence if, after considering any applicable sentencing factors in 18 U.S.C. § 3553, it finds 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction

is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Haynes*, 827 F. App'x 892, 895 (10th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [defendant's] request." *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (citations and internal quotation marks omitted) (vacating district court's Order denying motion under § 3582(c)(1)(A) and remanding with instructions to dismiss motion for lack of jurisdiction); *see also see also United States v. Poutre*, ___ F. App'x ___, No. 20-8043, 2021 WL 271948, at *1 (10th Cir. Jan. 27, 2021) (affirming district court's decision to dismiss for lack of subject matter jurisdiction defendant's § 3582(c)(1)(A) motion where district court concluded that defendant's "motion failed to meet the § 3582(c)(1)(A) standards"); *United States v. Harris*, No. 15-40054-01-DDC, 2020 WL 7122430, at *1–2 (D. Kan. Dec. 4, 2020) (discussing our Circuit's reading of § 3582(c) as jurisdictional).

When reviewing a challenge to a district court's denial of a § 3582(c)(1)(a) motion based on the § 3553(a) factors, the Tenth Circuit has adopted the abuse-of-discretion standard and will uphold the district court's ruling unless it relied on an incorrect conclusion of law or a clearly erroneous finding of fact. *See United States v. Pinson*, No. 20-6050, 2020 WL 7053771, at *2–3 (10th Cir. 2020).

## III.   Discussion

### A.   Exhaustion or Lapse Under 18 U.S.C. § 3582(c)(1)(A)

An inmate seeking compassionate release under § 3582(c)(1)(A) must first "request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies." *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (citations

omitted); *see also* 18 U.S.C. § 3582(c)(1)(A).  The court properly may consider a defendant's motion under § 3582(c)(1)(A) filed after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"  18 U.S.C. § 3582(c)(1)(A).  "In other words, if a warden lets 30 days pass without responding to an inmate's request under § 3582(c)(1)(A), the inmate may proceed directly to file a motion with the court who imposed the prison term."  *Harris*, 2020 WL 7122430, at *3 (discussing competing readings of "the lapse of 30 days").

The United States argues that Mr. White has failed to show exhaustion or lapse.  Doc. 269 at 13.  It asserts that to "properly exhaust administrative remedies . . . the administrative complaint must raise the same claims asserted in the federal court filing."  *Id.* at 15.  The government asks the court to apply that rule and conclude that Mr. White's "failure to present the Warden . . . with the *exact* arguments presented here results in his motion being subject to dismissal for failure to properly exhaust his available administrative remedies."  *Id.* at 13.

In stark contrast, Mr. White asserts that the law does not require issue-exhaustion at all, strict or otherwise.  *See* Doc. 273 at 9–11.  He reasons that an inmate's request to the warden under § 3582(c)(1)(A)(i) is a process that "is entirely inquisitive and should not be subject to an issue-exhaustion requirement."  *Id.* at 10.  The court lands somewhere between the parties' two positions, and now explains why.

### 1.   Whether 18 U.S.C. § 3582(c)(1)(A) Requires Strict Issue-Exhaustion

The court recently considered a question of "issue-exhaustion" under § 3582(c)(1)(A).  In that case, the court held that defendant had failed to satisfy § 3582(c)(1)(A)'s exhaustion or lapse requirement for medical conditions forming the basis of her motion for compassionate release because "nowhere in her request to BOP did she mention medical issues."  *United States v. Belair*, No. 17-40043-02-DDC, 2021 WL 50982, at *2 (D. Kan. Jan. 6, 2021).  The court

reasoned that defendant had failed to exhaust when there was "'simply no overlap at all'" between defendant's "(1) initial request to BOP and (2) subsequent motion that would have given 'the BOP a fair opportunity to consider whether to make the motion on the defendant's behalf.'" *Id.* (quoting *United States v. Burgoon*, No. 07-20072-05-JWL, 2020 WL 7396914, at *3 (D. Kan. Dec. 17, 2020)).

*Belair* comports with our Circuit's recent decision in *United States v. Gieswein*, 832 F. App'x 576, 577–78 (10th Cir. 2021) (affirming district court's dismissal of defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) for failing to comply with § 3582(c)(1)(A)'s exhaustion and 30-day requirements). *Gieswein* held that the defendant who had based his motion for compassionate release—at least in part—on "the risk he faces due to COVID-19" had "failed to meet the statute's exhaustion requirements and his COVID-19 justification was properly dismissed" where defendant's initial "request to the warden did not include COVID-19 as a reason for compassionate release." *Id.* *Gieswein* suggests that an inmate has failed to exhaust when the reason for compassionate release he asserts in the motion filed in court does not overlap with the reason(s) provided to the warden. *Id.* at 577.

Here, Mr. White dodges that "no overlap" defect. Unlike *Gieswein* and *Belair*, Mr. White's initial request to the warden *did* mention COVID-19 and medical issues. Indeed, he explained, "I am prone and/or at risk to catch the corona-virus due to my age. Currently, I have glaucoma and other minute [ ]heath issues." Doc. 263-2 at 1. So, this case asks whether § 3582(c)(1)(A)'s exhaustion requirement demands hyper-technical application. In *Belair*, the court recognized that potential issue but left it unresolved. *See Belair*, 2021 WL 50982, at *2. The government cites several cases from outside our Circuit considering this question. *See* Doc. 269 at 13–15. But our court already has confronted the issue several times.

In *McDaniel*, for example, our court rejected the government's argument that defendant had failed the exhaustion requirement for his Graves' disease because his written request to the warden mentioned several medical conditions, but not Graves' disease.  *United States v. McDaniel*, No. 07-20168-22-JWL, 2020 WL 5118108, at *1 n.1 (D. Kan. Aug. 31, 2020). *McDaniel* concluded that the court had jurisdiction to consider the totality of defendant's medical arguments for compassionate release where (1) the "warden had access to [defendant's] medical records," and (2) defendant "relied generally on his medical condition in making his request."  *Id.*; *see also United States v. Rucker*, No. 04-20150-JWL, 2020 WL 4365544, at *1 (D. Kan. July 30, 2020) (rejecting government's argument that defendant had "not fully satisfied the exhaustion requirement because" his motion "relies on certain medical conditions that he did not specifically cite in his request to the warden" where (1) "defendant argued that he suffers from 'a set of medical conditions,' including two particular conditions, that make him especially vulnerable to harm from the coronavirus[,]" (2) the "warden had access to defendant's medical records," and (3) "defendant relied generally on his medical condition in making his request").

Our court reached a similar conclusion in *United States v. Hudson*, No. 16-20033-02-JAR, 2021 WL 38012, at *3 (D. Kan. Jan. 5, 2021).  *Hudson* held that defendant's "submission to the warden of her facility" where defendant "offered her obesity as a reason supporting her request" for compassionate release "satisfies the exhaustion requirement" such that the court had jurisdiction to decide defendant's subsequent motion for compassionate release "based on all grounds presented" in the motion, including "other underlying medical conditions in support for her request[.]"  *Id.* at *3.  *Hudson* noted that "this Court has repeatedly rejected the issue exhaustion challenge to motions for compassionate release" where the government "argues that when a compassionate release motion does not *mirror* the grounds cited in the request submitted

to the warden, the defendant has failed to exhaust *all* issues, the so-called issue exhaustion argument." *Id.* (citing *United States v. Parada*, No. 5:03-40053-JAR-1, 2020 WL 4589781, at *4–5 (D. Kan. Aug. 10, 2020)) (emphasis added).  In short, our court's analysis consistently has rejected a hyper-technical or strict, issue exhaustion approach.  Our court's view is consistent with the recently decided *Gieswein*.

Mr. White's request to the warden mentions his age and glaucoma, as well as "other . . . health issues" when asserting that he is "prone and/or at risk to catch the corona-virus."  Doc. 263-2 at 1.  Given the generality of Mr. White's assertions linking his health and medical conditions to his COVID-19 risks, and the warden's access to defendant's medical records, the court concludes that Mr. White's BOP request and subsequent court motion share "a reasonable degree of overlap which [gave] the BOP a fair opportunity to consider whether to make the motion on the defendant's behalf."  *Burgoon*, 2020 WL 7396914, at *3 (citation and internal quotation marks omitted); *see also McDaniel*, 2020 WL 5118108, at *1 n.1; *Rucker*, 2020 WL 4365544, at *1.  Mr. White's request to the warden, *see* Doc. 263-2, thus was sufficient to initiate the administrative remedies for the ground for compassionate release he raises in his motion.  *See Springer*, 820 F. App'x at 791.

Mr. White asserts that he has met the lapse requirement because "more than 30 days have lapsed since Mr. White requested compassionate release from the warden of his facility" and "Mr. White never received a response regarding his request."  Doc. 273 at 7.  The government does not dispute Mr. White's allegation that the warden never responded, and rather only appears to challenge exhaustion on "issue exhaustion" grounds.  The court concludes that Mr. White has alleged facts showing that he meets § 3582(c)(1)(A)'s requirement of exhaustion or lapse.

Satisfied that Mr. White meets that requirement, the court now considers whether Mr. White's circumstance presents "extraordinary and compelling" reasons for purposes of § 3582(c)(1)(A).

### B.      Whether "Extraordinary and Compelling" Reasons Exist

The government concedes that "defendant's medical records confirm that he has a history of hypertension, hyperglycemia, latent tuberculosis, and obesity" and that "if the Court finds this matter is properly before it . . . then under the circumstances, the defendant has established extraordinary and compelling reasons pursuant CDC and / or DOJ guidelines allowing for consideration of compassionate release under Section 3582(c)(1)(A)."  Doc. 269 at 20–21.  The court just explained why it concludes that Mr. White clears the exhaustion hurdle.

And several of Mr. White's medical conditions remain on the CDC's lists of medical conditions that either increase or might increase the risk of severe illness from the virus that causes COVID-19.  *See* CDC, People with Certain Medical Conditions (updated Feb. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 10, 2021) (listing "Obesity" and "Hypertension").  And, the CDC has stated that "TB patients who are at least 65 years old . . . are at greater risk for severe COVID-19 infection."  CDC, Tuberculosis and Public Health Emergencies (updated Mar. 13, 2020), https://www.cdc.gov/tb/education/public-health-emergencies.htm (last visited Feb. 10, 2021); *but see United States v. Carter*, No. 11-CR-131-F-1, 2020 WL 7768422, at *4–6 (D. Wyo. Dec. 30, 2020) (surveying recent medical guidance and concluding that "it appears too early to know what effect a latent TB infection has on an individual's risks from the coronavirus that causes COVID-19").

Satisfied that extraordinary and compelling reasons exist here, the court next considers whether those reasons, given the relevant sentencing factors under 18 U.S.C. § 3553(a), warrant the sentence modification that Mr. White requests.

### C. Whether 18 U.S.C. § 3553(a)'s Sentencing Factors Support Modifying Mr. White's Sentence

The government opposes Mr. White's motion because, it argues, § 3553(a)'s sentencing factors disfavor his request.  Doc. 269 at 25.  The United States asserts that "a reduction to time-served would diminish the nature and seriousness of his offenses, the need for his sentence to provide just punishment, and otherwise promote respect for the law."  *Id.* at 25–26; *see also* 18 U.S.C. § 3553(a)(1)–(2)(A).

The difference between a defendant's original sentence and proposed modified sentence is proportional to the difference in the court's § 3553(a) analysis necessary to render the sentence reduction appropriate under § 3582(c)(1)(A).  *See United States v. Johnson*, No. 15-40064-01-DDC, 2020 WL 5981676, at *5–6 (D. Kan. Oct. 8, 2020) (discussing § 3553(a)).

If a proposed modified sentence strays too far from the original sentence, the § 3553(a) factors cannot support the sentence reduction, even where a defendant faces extraordinary and compelling circumstances.  *See United States v. Pope*, No. 16-10039-JTM, 2020 WL 5704270, at *1 (D. Kan. Sept. 24, 2020) ("This court has concluded that compassionate release based on COVID-19 related concerns should be denied where the resulting sentence would materially depart from an appropriate § 3553(a) sentence" (citations omitted)); *United States v. Kaufman*, No. 04-40141-1-JTM, 2020 WL 4196467, at *2 (D. Kan. July 21, 2020) ("Even when an older inmate faces some serious medical condition, compassionate release should be denied if it would radically alter the appropriate § 3553 sentence." (citations omitted)); *cf. United States v. Edwards*, No. 17-40093-01-DDC, 2020 WL 7263880, at *3 (D. Kan. Dec. 10, 2020) (granting

motion under § 3582(c)(1)(A) where defendant served nearly 95% of his sentence and already had transferred to a residential reentry center).

Here, Mr. White is set to complete his term of imprisonment on April 14, 2024.  *See* Claude White, Reg. No. 12177-031, https://www.bop.gov/inmateloc/ (last visited Feb. 10, 2021). So, roughly 38 months, or 18%, of his 204-months term of imprisonment remain.  He asks the court to modify his sentence by reducing his term of imprisonment to time served and adding a corresponding term of home confinement as a condition of his supervised release.  *See* Doc. 273 at 2 (¶ 4).  To grant this request would reduce the severity of Mr. White's sentence.  The extent of that severity reduction is the difference between (1) 38 months of imprisonment and (2) 38 months of home confinement.

Replacing a period of imprisonment with a corresponding period of home confinement can mitigate the extent to which the sentence modification dilutes the severity of the total sentence.  *See Johnson*, 2020 WL 5981676, at *6.  But home confinement and imprisonment are not exact equivalents.  Here, home confinement would replace about one-fifth of the total 204-months term of imprisonment.  A conclusion that this modified sentence is "sufficient . . . to comply with the purposes" § 3553(a)(2) sets forth would require a change in the court's view of § 3553(a)'s factors.

Mr. White emphasizes his age—65 years old—and argues that it demonstrates that he poses "little to no risk of recidivism."  Doc. 273 at 16–17.  He cites data showing an inverse relationship between age and re-arrest rates and reasons that the data suggest that the chances of recidivism are low for someone of his years.  *Id.*  But Mr. White offers few specifics to explain why *he* is likely to comport with this statistical trend.  He asserts that his "prior offenses and the instant offense were committed when [he] was a younger man with no medical conditions" and

that he "is no longer that man." *Id.* at 18.  But his Reply understates both the extent of Mr.

White's prior offenses and the fact that he was 54 years old when he engaged in the conviction

offenses—including armed bank robbery.[1]  *See id.* at 18; Doc. 99 at 2, 6 (Am. PSR ¶¶ 13, 16).

The details of Mr. White's history blunt the effect of his arguments for a sentence reduction

based on age or low risk of recidivism.  *See United States v. Sells*, 541 F.3d 1227, 1238 (10th

Cir. 2008) (concluding that defendant's criminal conduct in his late 50s "casts significant doubt

on [defendant's] *sub silentio* assertion that a shorter sentence is sufficient to deter future criminal

acts on his part because he is unlikely to commit additional crimes due to his age"); *United

States v. Rayford*, 466 F. App'x 687, 692 (10th Cir. 2011) (same).  And when our court

sentenced Mr. White— then 55 years old—it was aware that time would pass and that Mr. White

would age while he served his sentence.  Mr. White's age alone provides little support for his §

3582(c)(1)(a) claim.

       In contrast, the mix of Mr. White's age, medical conditions, and outbreak of COVID-19

at his BOP facility do support his request.  Mr. White notes that our court has given weight to

those circumstances in other cases.  Specifically, he points to our court's decision in *Rayford*

granting Mr. White's co-defendant's request for sentence modification in July 2020.  Doc. 273 at

19 & n.70 (citing *United States v. Rayford*, No. 09-20143-01-JWL, 2020 WL 4335013, at *2 (D.

Kan. July 28, 2020)).  *Rayford* modified the sentence of a 69 year old defendant by replacing

roughly 15 months' incarceration—about 9% of defendant's 168-months sentence—with home

confinement.  *Rayford*, 2020 WL 4335013, at *2–3.  Mr. White asserts that his claim and his co-

defendant's claim are comparable.  Doc. 273 at 19.

---

[1]      The Amended Presentence Report shows a pending charge for domestic battery and an associated warrant issued on November 10, 2009.  Doc. 99 at 22 (Am. PSR ¶¶ 105–06).  Mr. White's Reply asserts that "[t]o undersigned counsel's knowledge, there are no longer any active warrants against Mr. White." Doc. 273 at 18.

But the real question is how comparable they are.  On one hand, both men filed motions while in their sixties with medical conditions that are risk factors for more serious COVID-19 outcomes and while incarcerated at BOP institutions with COVID-19 outbreaks.  But on the other hand, their requests for relief differ in several substantial ways.  These differences render Mr. White's claim less compelling than his co-defendant's.

*First*, their requests differ in magnitude.  *Rayford* replaced about 9% of Mr. Rayford's term of imprisonment with home confinement.  Here, Mr. White asks for double the reduction— home confinement for 18% of his term of imprisonment.  Unlike Mr. Rayford's request, the relief that Mr. White seeks makes him an outlier among the court's cases about § 3582(c)(1)(A) relief for an inmate's medical conditions during the COVID-19 pandemic.[2]

*Second*, Mr. Rayford and Mr. White have divergent criminal history categories.  Mr. Rayford had a criminal history category of I—the lowest, while Mr. White had a criminal history category of VI—the highest.  *Compare* Doc. 99 at 21 (Am. PSR ¶ 98) (noting that Mr. White's "17 criminal history points establish a criminal history category of VI"), *with* Doc. 72 at 18 (PSR ¶ 91) (noting that Mr. Rayford's "0 criminal history points establish a criminal history category of I").  The Tenth Circuit itself noted the different criminal histories of Mr. White and his co-defendants.  *See White*, 433 F. App'x at 682 (observing that "the disparity between [Mr. White's]

---

[2]    Where the court *has* granted relief under § 3582(c)(1)(A), defendants typically sought sentence modification of a lower magnitude than that which Mr. White seeks.  *See, e.g.*, *Edwards*, 2020 WL 7263880, at *3 (granting § 3582(c)(1)(A) motion where roughly 5% of defendant's term of imprisonment remained and defendant already had transferred to a residential reentry center); *United States v. Villa-Valencia*, No. 16-20008-07-DDC, 2020 WL 7263894, at *1 (D. Kan. Dec. 10, 2020) (granting unopposed § 3582(c)(1)(A) motion where roughly 13% of defendant's term of imprisonment remained and defendant faced deportation upon release); *Johnson*, 2020 WL 5981676, at *6 (granting § 3582(c)(1)(A) motion where roughly 12% of defendant's term of imprisonment remained).  And the court has held that a defendant's circumstances, in light of § 3553(a), did not warrant relief far more modest than Mr. White's request.  *See, e.g.*, *United States v. Wuellner*, No. 13-20031-01-DDC, 2021 WL 51024, at *2–3 (D. Kan. Jan. 6, 2021) (holding defendant's incarceration and health conditions during COVID-19 pandemic, though "extraordinary and compelling," were not sufficient given the § 3553(a) factors to warrant replacing the remaining 9% of defendant's term of imprisonment with home confinement).

sentence and the sentence received by his codefendants . . . is explained by his more extensive criminal history").

*Third*, the two men are different ages.  The CDC informs that the "risk for severe illness with COVID-19 increases with age[.]"  CDC, COVID-19 Guidance for Older Adults (updated Jan. 8, 2021), https://www.cdc.gov/aging/covid19-guidance.html (last visited Feb. 10, 2021).  Mr. White is 65.  Mr. Rayford was 69 when our court granted his motion for compassionate relief.  While their age gap is not vast, the court nonetheless finds it noteworthy given the relationship between age and COVID-19 outcomes.  And Mr. White's above-discussed assertion that age and recidivism are inversely correlated provides relatively more support to the elder Mr. Rayford's claim than Mr. White's.

Ultimately, Mr. White's claim for relief under § 3582(c)(1)(A) differs from his co-defendant's.[3]  Overall, those differences render Mr. White's claim for relief relatively weaker than Mr. Rayford's.  Mr. White asks the court to reach twice as high while providing it a shorter ladder.  *Rayford* does not require—legally or logically—granting the motion here.

Given Mr. White's incarceration, age, and health conditions during the COVID-19 pandemic, the court's assessments of some factors under § 3553(a) have shifted.  Several sentencing factors favor a lesser sentence today than when our court considered them during Mr. White's 2010 sentencing.  *See, e.g.*, 18 U.S.C. § 3553(a)(1), (2)(D), (3).  The more challenging question is whether those factors have shifted far enough to conclude that the pertinent § 3553(a)

---

[3]    But not every difference leans in Mr. Rayford's favor.  The court recognizes that unlike Mr. Rayford, Mr. White asserts that he tested positive for the virus that causes COVID-19.  Doc. 273 at 2.  The court notes both Mr. White's asymptomatic status and the medical expert's declaration that Mr. White provided suggesting that "[e]ven if a person recovered from a first infection with the virus that does not mean that they will recover from a subsequent infection.  An individual could survive a first infection and die from a subsequent infection."  Doc. 273-3 at 7 (Vijayan Decl. ¶ 25).  Mr. White informs the court of conditions suggesting that COVID-19 remains present at his BOP institution.  *See* Doc. 288 at 1–2.

factors—*in aggregate*—warrant the actual modified sentence that Mr. White seeks. The court concludes that they do not.

## IV.     Conclusion

Mr. White presents a circumstance that qualifies as extraordinary and compelling under § 3582(c)(1)(A)(i). The court carefully considered the § 3553(a) sentencing factors and how they apply to Mr. White's requested sentence modification. On balance, the court concludes that the modified sentence that Mr. White requests falls short of reflecting the applicable sentencing factors and would not comply with the purposes that § 3553(a)(2) lists. After considering the applicable § 3553(a) factors, the court determines that extraordinary and compelling reasons do not warrant the sentence reduction requested.

Tenth Circuit caselaw requires the movant to show that § 3582(c) authorizes relief for the court to have jurisdiction. *Poutre*, 2021 WL 271948, at *1; *Saldana*, 807 F. App'x at 820. Mr. White has failed to make that showing here. The court thus lacks subject matter jurisdiction and must dismiss the motion accordingly.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. White's Motion for Compassionate Release (Doc. 263) is dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

**Dated this 10th day of February, 2021, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree_____**
> **Daniel D. Crabtree**
> **United States District Judge**

14